IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                      CASE NO. 4:14-cr-11-MW/CAS

JUDY GRACE SELLERS

### UNITED STATES' BRIEFING REGARDING DEFENDANT'S REPRESENTATION

On January 11, 2024, this Court conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), to determine whether defendant would represent herself in this matter or be represented by counsel. At the conclusion of the hearing, this Court requested briefing regarding (i) what the law says about how to proceed with regard to counsel when a defendant has clearly stated that she does not wish to be represented but also has not expressed a desire to represent herself and (ii) whether there is additional ground that needs to be covered as part of the *Faretta* inquiry before proceeding. As described herein, this Court's previous inquiries of, and discussions with, the defendant are sufficient to satisfy the requirements of *Faretta*, and this Court should proceed by permitting defendant to represent herself in these proceedings with current counsel made available to her as stand-by counsel.

## FACTUAL BACKGROUND

### I. Defendant's Initial Proceedings in 2014–15

Defendant was indicted on February 4, 2014. Doc. 1. The indictment was superseded on December 3, 2014. Doc. 7. The December 3, 2014, indictment is the operative indictment. *Id.*

Defendant made her initial appearance on December 19, 2014. Doc. 19. On the same day, the Federal Public Defender (FPD) was appointed to represent her. Doc. 20. The order appointing the FPD stated "the Defendant indicated that she does not want to be represented by the Federal Public Defender. However, over objection, the Federal Public Defender is appointed to represent Defendant in this case." *Id.* The magistrate judge's order of detention reflects that:

> During the First Appearance proceeding, Defendant was advised of the nature of the pending charges and the maximum penalties, and advised of her rights, including the right to hire a lawyer of her choosing or to have a lawyer appointed without charge. Defendant made several impromptu remarks including, but not limited to, the following: . . . did not request to be represented by a lawyer of her choosing; and objected to the appointment of the Federal Public Defender. Over defendant's objection, the Federal Public Defender was appointed to represent the Defendant in this proceeding and Defendant was further advised that she had until December 26, 2014, to have her retained counsel (if chosen) file a notice of appearance. *See* doc. 20.

Doc. 27. Later, the detention order was revoked and defendant was released on conditions. Docs. 42, 49. During the proceedings regarding the revocation of the detention order, defendant was represented by counsel.

After being released on conditions, defendant absconded in early 2015. Docs. 82, 213 at 5.

## II.  Defendant's Proceedings in 2023–24

Defendant was not apprehended until September 2023, when she was arrested in New Mexico. Doc. 213. Rule 5 documents from the District of New Mexico reflect that defendant requested to proceed *pro se* at her initial appearance there. *Id.* at 8.

On December 12, 2023, defendant appeared in the Northern District of Florida and was ordered detained pending trial. Doc. 216. This Court again appointed the FPD to represent defendant over her objection. Doc. 218.

On January 2, 2024, defendant's appointed counsel moved this court to conduct a hearing to determine whether defendant should be represented or should represent herself in these proceedings. Doc. 224. In his motion, defendant's counsel represented that defendant had indicated on December 12, 2023, at her bond revocation hearing, and subsequently, that she did not wish to be represented by an attorney. *Id.*

### III. The *Faretta* Hearing

On January 11, 2024, this Court conducted the requested *Faretta* hearing. During the *Faretta* hearing, the defendant repeatedly and definitively rejected appointed counsel. *See* Tr. at 3 ("I do not want him to be my attorney. He will not represent me."); *id.* (The Court: "You do not want him as your lawyer?" Defendant: "That's correct."); *id.* at 7 (defendant, explaining her view of the proceedings, and concluding "And that's why I don't want an attorney beside me."). Defendant also at various points expressed that she did not wish to represent herself. *Id.* at 7–8 ("Sir, if I may, I'm not remotely interested in being my own lawyers either, or *pro se*, or representing myself or any of that. I believe with all of my heart that Elohim, my creator in heaven above, is my only defense.").

This court made competency inquiries, and having made those inquiries, concluded "you've done nothing either in your prior appearance or today that leads me to believe that you're not competent to proceed." *Id.* at 9–10. This Court concluded that a competency evaluation was not necessary – with which both counsel for the government and the FPD appearing at the hearing agreed. *Id.* at 10–11.

This Court then proceeded with inquiring whether defendant was competent to represent herself. This Court explained at the hearing that if

4

defendant represented herself she would "be subject to the limitations that exist because you're in custody," and provided examples of those limitations. *Id.* at 5. This Court explained that defendant would need to abide by the rules of the Court and could be removed from the courtroom if she did not comply and the proceedings would go on without her. *Id.* at 12. The Court explained that "even if you act as your own lawyer or sit and say nothing, I'm still going to apply the Rules of Evidence and the Rules of Procedure just as if a lawyer were here" and defendant indicated she comprehended that. *Id.* This Court explained to defendant that her lack of formal training put her at a disadvantage in representing herself, and defendant rejected that and stated that she did not believe in her heart that she would be disadvantaged. *Id.* at 12–14. Upon further discussion, defendant's responses reflect that she comprehended the judge's warnings, but disagreed that she would be disadvantaged, stating "I believe it's to my advantage that I don't have the worldly knowledge of being an attorney or operating in a courtroom to that effect," and then stated, "I know what you are trying to get at." *Id.* at 14–15.

      This Court then remarked "There's a difference between whether or not Ms. Sellers makes a knowing and intelligent waiver and is competent within the meaning of the law, recognizing all the limitations if you don't have legal

5

training, versus what do you do if the defendant will simply not participate – not in a disrespectful way, but just won't participate." *Id.* at 17.

This Court then conducted additional inquiry in accordance with *Faretta*. This included a detailed discussion of the nature of the charges (*id.* at 21–27), the associated penalties (*id.* at 27–28), defendant's right to an attorney (*id.* at 29), what the attorney would do in terms of representing defendant at trial (*id.* at 29–30), and defendant's right to remain silent (*id.* at 30–31). Defendant indicated she had experienced a previous federal trial. *Id.* at 32. Defendant acknowledged that the appointed FPD had specialized training and experience in how to conduct trials that defendant lacks. *Id.* at 32–33. Defendant acknowledged this Court's warning that acting as her own lawyer was a bad idea. *Id.* at 34–36.

Toward the end of this discussion, defendant again repeatedly expressed her desire to fire her court-appointed lawyer. *Id.* at 37–38. Defendant again acknowledged understanding the limitations she would be under in acting on her own behalf while in custody, that the federal rules would apply, and that she would be subject to the same standards as a lawyer in terms of her courtroom behavior. *Id.* at 38–41. Defendant acknowledged that she would not be able to appeal a conviction based on ineffective assistance of counsel if she chose to proceed without counsel. *Id.* at 41.

6

After concluding its inquiry, this Court documented its findings orally on the record. *Id.* at 43–45. In summary, this Court found that defendant is mentally competent, understands her rights, understands the potential consequences of proceeding without an attorney, and has voluntarily and intelligently waived her right to counsel.

## MEMORANDUM OF LAW

### I. The Requirements of *Faretta*

Under *Faretta*, a defendant may waive her right to counsel by invoking her right to self-representation and confirming her knowing choice through a cooperative dialogue with the court. *Faretta*, 422 U.S. at 835. "The ideal method of assuring a voluntary waiver is for the trial judge to conduct a pre-trial hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation." *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991). "The hearing . . . is a means to the end, namely ensuring a voluntary and intelligent waiver." *Strozier v. Newsome*, 871 F.2d 995, 998 (11th Cir. 1989). The Eleventh Circuit has found effective waivers of counsel absent a formal *Faretta* hearing. *See e.g.*, *United States v. Stanley*, 739 F.3d 633, 646 (11th Cir. 2014) (holding the defendant knowingly and intelligently waived his right to counsel although the district court did not initially conduct an adequate *Faretta* hearing, but later held one hearing after the

7

defendant gave his opening statement, the total record of which established sufficient waiver.

"The knowing and voluntary standard considers whether the defendant knows the risks of proceeding without a lawyer and voluntarily makes the decision to proceed without counsel in light of those risks." *United States v. Cobble*, No. 20-13166, 2022 WL 3448354, at *7 (11th Cir. 2022) (citing *United States v. Kimball*, 291 F.3d 726, 731 (11th Cir. 2002)). The Eleventh Circuit sets forth eight factors—the *Fitzpatrick* factors—for determining whether a defendant makes a knowing and voluntary waiver:

> (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.

*Stanley*, 739 F.3d at 645–46 (citing *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065–67 (11th Cir. 1986)).

II.   *Faretta* **Inquiries with an Uncooperative Defendant**

When an unwilling defendant refuses to engage in a dialogue with the court about the dangers of self-representation, the Eleventh Circuit has held that

8

it is sufficient for a court to inform the defendant unambiguously of the penalties she would face if convicted and provide her with a sense of the challenges she would endure as a *pro se* litigant. *United States v. Garey*, 540 F.3d 1253, 1267 (11th Cir. 2008). In that scenario, the relevant inquiry focuses on whether the court assures the defendant that she "(1) understands the choices before [her], (2) knows the potential dangers of proceeding *pro se*, and (3) has rejected the lawyer to whom [she] is constitutionally entitled." *Id.* If the court informs the defendant of these the three areas, "the court may, in the exercise of its discretion, discharge counsel or (preferably, as occurred here) provide for counsel to remain in a standby capacity," because "[i[n such cases, a *Faretta*-like monologue will suffice" as the defendant's waiver of her right to counsel. *Id.*

The Eleventh Circuit's decision in *Garey* controls. There, the Eleventh Circuit considered a situation involving "an uncooperative defendant [who] adamantly and knowingly reject[ed] the competent counsel to which he [was] constitutionally entitled, but also refuse[d] to invoke affirmatively his right to self-representation." *Id.* at 1257. Three days before trial began, the defendant requested a new lawyer, arguing the lawyer who represented him for 15 months prior was unable to advocate zealously on his behalf. *Id.* The trial court rejected this purported conflict and provided the defendant two options: accept his current lawyer's representation or represent himself. *Id.* Unsatisfied with

9

both options, the defendant rejected his current lawyer's representation while refusing waiver of his right to counsel. *Id.* Faced with the defendant's lack of cooperation, and after several attempts to engage with the defendant, the trial court found the defendant knowingly and voluntarily waived his right to counsel and appointed his current lawyer as standby counsel through trial. *Id.* at 1258.

On appeal, the defendant argued that the district court forced him to represent himself in violation of the Sixth Amendment when the court treated his lack of cooperation to the two options as an affirmative waiver of his right to counsel. *Id.* at 1259–62. After review en banc, the Eleventh Circuit rejected this argument.[1] *Id.* at 1262–70. Reviewing case law from sister circuits, the *Garey* court noted "[t]hese courts hold that a defendant who rejects appointed counsel but refuses to cooperate with the court by affirmatively expressing his desire to proceed *pro se*, effectively chooses self-representation by rejecting the only other choice to which he is constitutionally entitled." *Id.* at 1264 (collecting cases). The court then created a carve-out from *Faretta* and prior Eleventh Circuit law, holding:

> When a defendant rejects his court appointed counsel or otherwise engages in behavior that creates tension between his right to counsel and his right to self-

---

[1] A divided panel originally agreed with the defendant and reversed his conviction. *Garey*, 540 F.3d at 1262. But, the Eleventh Circuit later withdrew that decision, reviewed the issue of the defendant's waiver of his right to counsel en banc, and affirmed his conviction. *Id.* at 1270.

> representation, a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices and asking him to choose between them. **And, when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choices**.

*Id.* at 1265–66 (emphasis added). Applying this standard, the Eleventh Circuit found that the district court sufficiently advised the defendant of the choices before him and the dangers of proceeding without counsel. *Id.* at 1265–70. Notably, the district court carefully reviewed with the defendant his anticipated guideline sentence, warned the defendant of the danger of unintentionally waiving his right against self-incrimination during opening statements, and cautioned him that he could be impeached at trial with evidence of past convictions if he chose to testify. *Id.* at 1269. The district court also repeatedly expressed that the defendant's counsel could offer advice and assistance, to which the defendant explained he would "manage his own destiny." *Id.*

### III. Defendant Has Waived Her Right to Counsel and Chosen Self-Representation Pursuant to *Faretta* and *Garey*

Defendant's conduct and representations to the Court resemble those of the defendant in *Garey*. At the *Faretta* hearing on January 11, 2024, defendant repeatedly rejected her appointed counsel and expressed she did not elect self-representation. *See* Tr. at 3 ("I do not want him to be my attorney. He will

11

not represent me."); *id.* (The Court: "You do not want him as your lawyer?" Defendant: "That's correct."); *id.* at 7 (defendant, explaining her view of the proceedings, and concluding "And that's why I don't want an attorney beside me."); *id.* at 7–8 ("Sir, if I may, I'm not remotely interested in being my own lawyers either, or *pro se*, or representing myself or any of that. I believe with all of my heart that Elohim, my creator in heaven above, is my only defense."). Like the defendant in *Garey*, defendant stated she recognized the Court may appoint her lawyer as standby counsel, but nevertheless she would choose not to participate in the case. *Compare* Tr. at 13–14 ("I mean, even if you assign him as a standby counsel or something like that, I'm not going to participate in the case except the fact that I will be brought here against my will. That's the only -- that's the only participation I will have in it.") *with Garey*, 540 F.3d at 1262 (the defendant: "Your Honor, I'm not voluntarily waiving my Sixth Amendment rights, but I'm not going to allow Mr. Huggins to continue as representation. I mean, if you let him stay on as stand-by counsel for insurance, I'm not going to argue with the Court on that . . . I'm going to manage my own destiny at that point, Your Honor, because I have no other alternative except to proceed either with an attorney who I believe is a conflict or to represent myself."). In essence, like the defendant in *Garey*, defendant's statements

12

constitute a rejection of her current counsel and self-representation, which means she "effectively chooses self-representation." *Garey*, 540 F.3d at 1264,

Eleventh Circuit progeny since *Garey* reaches the same result. *See e.g.*, *United States v. Wilson*, 979 F.3d 889, 914 (11th Cir. 2020) (holding the district court properly proceeded to trial with *pro se* defendant without appointing standby counsel after the defendant knowingly rejected his two available options—representing himself or moving to continue trial for one week so his attorney could be present as standby counsel); *United States v. Amede*, 977 F.3d 1086, 1110–12 (11th Cir. 2020) (holding the defendant knowingly and voluntarily waived his right to counsel at sentencing when the defendant refused to speak with his counsel and twice insisted on proceeding without his counsel); *United States v. Morris*, 489 F. App'x 407, 414 (11th Cir. 2012) (holding the defendant knowingly and voluntarily waived his right to counsel by his acts in refusing to allow a court-appointed lawyer to represent him, refusing to proceed *pro se*, and refusing to engage the District Court in a meaningful discussion about his right to counsel).

Simply put, the Eleventh Circuit has spoken on Defendant's situation. The answer is clear. Her unwillingness to choose between her appointed counsel and self-representation means she must represent herself. The extent she chooses to participate or put on her own defense remains her decision. As

13

discussed next, the Court sufficiently advised her of the pitfalls and dangers of self-representation, particularly without engaging her counsel. Thus, nothing remains for the Court to do regarding defendant's choice because "[a] dialogue cannot be forced." *Garey*, 540 F.3d at 1267. The best course forward is to allow defendant to proceed *pro se* and appoint her lawyer as standby counsel.

## IV. No More *Faretta* Inquiry is Needed

The remaining question concerns whether the Court must continue its *Faretta* inquiry to ensure defendant provided a knowing and voluntary waiver of her right to counsel. In this situation, the Eleventh Circuit held that "it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to confront as a *pro se* litigant." *Garey*, 540 F.3d at 1267; *cf. United States v. Hakim*, 30 F.4th 1310, 1324–25 (11th Cir. 2022) (holding the defendant never voluntarily waived his right to counsel when the lower court misinformed the defendant of the potential penalties he faced upon conviction without correction from the court or a different source later in the proceedings). For example, in *Cobble*, the Eleventh Circuit held the district court "comprehensively advised" the defendant of the "dangers and disadvantages of self-representation" under *Garey* when the district court advised the defendant (1) repeatedly of the advantages that a trained lawyer would have in protecting the defendant's rights;

14

(2) of "voir dire, opening statements, calling witnesses, cross-examining the government's witnesses, the right not to put up witnesses, the right to testify and the right not to testify pursuant to the Fifth Amendment . . . the closing arguments, the court's instructions to the jury, the fact that the jury would be composed of twelve jurors and that, to convict him, the government would have to convince all twelve jurors beyond a reasonable doubt;" (3) of the nature of the charges and potential penalties; and (4) the defendant's ideas about his own defense. 2022 WL 3448354, at *9.

Here, the Court covered similar ground with defendant at the *Faretta* hearing on January 11, 2024. First, the Court verified no issue existed regarding defendant's competency when it inquired about her history of mental health issues and treatment (for which she had none), education (some college), and ability to read and write in English. Tr. at 4–5, 9–11. Second, the Court walked through expectations of defendant if she represented herself at trial, including (1) the limitations of preparing her defense while in custody, along with examples of those limitations (*id.* at 5); (2) the application of the Rules of Evidence and Rules of Procedure "just as if a lawyer were here," and need to abide by the Court's rules (*id.* at 12); and (3) the disadvantages defendant would face from a lack of formal legal training (*id.* at 12–14). The Court then engaged in a detailed discussion of: (1) the nature of the charges (*id.* at 21–27); (2) the

associated penalties (*id.* at 27–27); (3) defendant's right to an attorney (*id.* at 29); (4) her right to remain silent (*id.* at 30–31); (5) and defendant's inability to appeal based on ineffective assistance of counsel (*id.* at 24–36). Third, after concluding its inquiry, the Court documented its findings orally on the record, which in effect provided Defendant an opportunity to object or otherwise disagree with the Court's assessment. *Id.* at 43–47. Though at times throughout the Court's inquiry, defendant disagreed with the Court's use of certain language or quibbled with the Court's characterization (*id.* at 12–15), defendant's responses generally reflected that she comprehended the judge's warnings (*id.* at 14–15, 32–36). And after these inquiries, defendant reiterated her desire to fire her court-appointed lawyer, while acknowledging the limitations of self-representation identified by the Court. *Id.* at 38–42.

Moreover, contrary to defense counsel's suggestion in his response, no further inquiry is needed "to ensure Ms. Sellers does not want any counsel as opposed to" her specific counsel. *See* Doc. 231 at 3. Defendant rejected the appointment of any counsel at her initial appearance. *See* Doc. 20. Further, at the January 11, 2024 hearing, defendant took no issue with her current counsel, acknowledged that her counsel had the legal "training and experience" that she does not have, but stated that she's choosing to rely "on God" rather than counsel or self-representation. *See* Tr. at at 46 ("THE COURT: I'll ask,

although it's clearly implicit in what she's said, but, Ms. Sellers, it's a fair decision? Nobody has threatened you or promised you with anything to get you to fire Mr. DeBelder; correct? THE DEFENDANT: Oh, nothing like that. THE COURT: You -- THE DEFENDANT: I have no problem with this man, sir. I really don't."); *id.* at 46–47 (THE COURT: "Generally we ask the question of why do you think you would be a better lawyer than having a trained experienced lawyer like Mr. DeBelder. As I understood your answer, it's, Judge, I wouldn't be, but I'm relying on God, not myself or Mr. DeBelder. Is that a fair characterization? THE DEFENDANT: Yes."); *id.* at 29–30 (dialogue wherein defendant acknowledges defense counsel's training and experience as a lawyer). Even if defendant's statements could be construed as rejecting her specific counsel, the issue is of no moment because defendant does "not have an unqualified right to counsel of [her] choice." *Morris*, 489 F. App'x at 413 (citing *Garey*, 540 F.3d at 1263–64). "[A]bsent good cause to dismiss a court-appointed lawyer, an indigent defendant must accept the appointed lawyer or proceed *pro se*." *Id.* Defendant presented no good cause (or any cause) to dismiss her court appointed lawyer, as she only expressed a desire to proceed to trial relying on her faith. *See e.g.*, Tr. at 6–7; 44–45.

Simply put, the record reflects that the Court sufficiently advised defendant of the penalties she faces and the dangers of self-representation. The

17

Court discussed the considerations espoused to defendants in similar situations that the Eleventh Circuit has affirmed as a sufficient "*Faretta*-like monologue" giving rise to waiver. *See e.g.*, *United States v. Estrada*, 530 F. App'x 852, 857 (11th Cir. 2013) (holding court provided proper *Faretta*-like monologue giving rise to a valid waiver when the court explained the defendant (a) only has one opportunity for trial; (b) faces a possible life sentence; (c) the defendant's case was criminal, not commercial; (d) the defendant has the right to decide whether to represent himself; (e) the advantages of a lawyer; and (f) and potential appeal issues); *United States v. Smith*, 417 F. App'x 911, 915 (11th Cir. 2011) (holding sufficient waiver when magistrate judge gave *Faretta* warnings and information, including questioning the defendant about his education, emphasizing his counsel's competency, explaining the defendant's choices, warning the defendant of the risks of *pro se* representation, along with the charges, basic trial procedures, and possible punishment). Defendant's competency, education, familiarity with the Court through one prior federal criminal trial, coupled with the Court's extensive warnings and information provided about the penalties she faces, the dangers of self-representation, and expectations at trial, demonstrate that Defendant made an intelligent, knowing, and voluntary waiver of her right to counsel at the January 11, 2024 hearing. Accordingly, no further inquiry is needed.

## CONCLUSION

This Court's inquiries during the *Faretta* hearing on January 11, 2024 establish that defendant has waived her right to counsel and this Court should proceed by permitting defendant to represent herself in these proceedings with current counsel made available to her as stand-by counsel.

*I hereby certify in accordance with N.D. Fla. Loc. R 7.1(F) that this memorandum contains 4,243 words.*

        Respectfully submitted,

        MERRICK B. GARLAND
        United States Attorney General

By:   */s/ Laura Cofer Taylor*
       LAURA COFER TAYLOR
       Special Attorney to the
       U.S. Attorney General
       Florida Bar No. 1005224
       300 N. Hogan Street, Suite 700
       Jacksonville, Florida 32202
       Telephone:   (904) 301-6300
       Facsimile:    (904) 301-6310
       E-mail: laura.c.taylor@usdoj.gov