IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.

JUDY SELLERS,

_____/

**SUPERSEDING
INDICTMENT**
Case No. 4:14cr11-MW

THE GRAND JURY CHARGES:

## A. INTRODUCTION

At all times material to this Indictment;

1.  The Internal Revenue Service ("IRS") was a bureau within the United States Department of the Treasury ("Treasury") and an agency of the government of the United States. The IRS was responsible for the administration and enforcement of Title 26 of the United States Code (commonly referred to as the "Internal Revenue Code").

2.  Included within the IRS's governmental functions were the responsibility and authority to ascertain, compute, assess, and collect taxes ("revenue") and to conduct related investigations, examinations, audits, and enforcement actions. The governmental functions of the IRS also included the responsibility and authority to investigate fraudulent activity related to the income tax refund process, to obtain the repayment of any such fraudulently disbursed tax refunds, and to seek penalties against those responsible for such fraud.



3. IRS Form 1099-OID ("1099-OID") was a reporting form, the contents of which were prepared and submitted to the IRS by banks and other financial institutions that had issued certain certificates of deposit, bonds, or other types of interest-earning debt instruments to taxpayers. The annual interest accruals earned by taxpayers holding these debt instruments, along with any tax amounts withheld by the issuing financial institutions from such interest income, were reported by these same financial institutions to the IRS as reflected in a 1099-OID.

4. IRS Form 1099-A ("1099-A") was a reporting form, the contents of which were prepared and submitted to the IRS by lenders after the foreclosure or repossession of property which the lender held as security for a loan (or when the lender had reason to suspect that such property had become abandoned by the borrower). The repossession, foreclosure or abandonment of such property, as well as the balance of the outstanding principal debt secured by such property and its market value, was reported by the lender to the IRS as reflected in a 1099-A.

5. An "OID scheme" was a particular type of fraudulent tax refund scheme premised upon the so-called "redemption theory." This fictional theory stood for the false proposition that every United States citizen could avoid responsibility for his or her personal debts and obtain reimbursement of certain expenditures by seeking an equivalent amount of funds which were purportedly held on deposit within accounts maintained by the Treasury in the names of each citizen's so-called

2

"straw man." According to the redemption theory, a citizen's "straw man" was an alter ego identity established by the government for each living (a/k/a "flesh and blood") citizen. In order to differentiate the "living citizen" from his or her "straw man" counterpart, redemption theory adherents routinely designated the so-called living citizen by spelling his or her name with a mixture of upper and lower case letters and strategically placed punctuation marks. Redemption theory adherents would submit to creditors, including the federal government, fictitious financial instruments drawn on their "straw man" treasury accounts to pay their debts.

6.  According to OID scheme proponents, one method by which a living citizen could obtain or "redeem" the funds on deposit in his or her "straw man" account was through the submission of personal income tax returns to the IRS which had been prepared through a fraudulent process (hereinafter referred to as "OID tax returns"). These OID tax returns made use of the same types of income and tax withholding figures reported by financial institutions upon Form 1099-OIDs and 1099-As (hereinafter collectively referred to as "1099 forms"). In connection with this scheme, OID tax returns falsely set forth on IRS Form 1040 and 1040X Individual Tax Returns that the taxpayer had received sizable amounts of 1099-reported interest and other income, but concurrently stated that an equivalent amount of tax had also been withheld. Through this fraudulent tax return preparation method (hereinafter referred to as the "OID process"), the taxpayer would falsely

claim that he or she was entitled to receive a substantial tax refund supposedly on account of the taxpayer's overpayment of income taxes.

7. Defendant **JUDY SELLERS**, a resident of Chipley, Florida, and others, devised and participated in a scheme to help taxpayers, including herself, obtain fraudulent tax refunds from the IRS by filing OID tax returns using the OID process.

8. Under the scheme, defendant **JUDY SELLERS**, assisted by co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** and others known and unknown to the grand jury, prepared false Form 1099-OIDs and Forms 1099As on their behalf and on behalf of the other participants in the scheme. These 1099-OID forms falsely reported that taxpayers' creditors had withheld large amounts of federal income taxes and paid this money over to the IRS. Defendant **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR, and VERDELL DUHART** then counseled and assisted various taxpayers including, but not limited to, defendant **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** to file 1040 and 1040X OID tax returns which claimed large tax refunds to which they were not entitled.

9. Using the IRS's Filing Information Returns Electronically (FIRE) system, an electronic database that accepts submissions, defendant **JUDY**

SELLERS and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** filed forms 1099-OID and 1099-As for approximately 11 individuals who ultimately filed OID tax returns. Collectively, the 22 OID tax returns sought refunds totaling over $3.4 million.

### COUNT ONE

1. Paragraphs A1 through A9 of the Introduction section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. Beginning in or about September, 2008, the exact date being unknown to the grand jury, and continuing to in or about September, 2009, in the Northern District of Florida and elsewhere, the defendant,

### JUDY SELLERS,

did unlawfully, willfully, and knowingly conspire, combine, confederate and agree with others known and unknown to the grand jury: (a) to commit an offense against the United States, namely, to aid and assist in, and procure, counsel, and advise the preparation and presentation, under the internal revenue laws, or in connection with any matter arising under the revenue laws, of a return, affidavit, claim, or other document which is fraudulent or false as to any material matter, in violation of Title 26, United States Code, Section 7206(2); and (b) to defraud the United States for the purpose of: (*i*) cheating the United States Treasury of funds through false, fictitious,

5

and fraudulent tax refund claims made upon the IRS and (*ii*) impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment and collection of federal income taxes, the repayment of Treasury funds fraudulently disbursed, and the imposition of penalties against those responsible.

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendant and co-conspirators to unlawfully enrich themselves and others by engaging in a fraudulent OID tax return scheme designed to cheat the United States out of Treasury funds through the preparation and submission to the IRS of materially false and fraudulent OID tax returns and other tax-related documents, including fictitious 1099 forms, and to prevent and hinder the IRS from being able to collect repayment of any tax refunds fraudulently obtained as a consequence of their conspiracy and from seeking the imposition of penalties against the defendant and co-conspirators.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** sought to accomplish the object and purpose of the conspiracy included, among other acts, the following:

a. It was part of the manner and means that **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** used the services of a book keeping and tax preparation service business identified as ABACO Executive Services, Inc. (ABACO) located in Panama City, Florida, and elsewhere, and owned and operated by **BLAINE JOHNSTON** and others.

b. It was part of the manner and means that **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** did assist, counsel and advise each other, and others known and unknown, to file false and fraudulent OID tax returns and fraudulent claims for income tax refunds in order to defeat IRS's efforts to detect the fraudulent returns, to recover fraudulently obtained refunds, and to impose the payment of penalties.

c. It was part of the manner and means that **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** would actually file false and fraudulent OID tax returns and claims for tax refunds on their own behalf and on behalf of others in order to obtain funds from the United States Treasury to which they were not entitled.

d. It was part of the manner and means that **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** would and did assist, counsel, and advise each other, and others, on how

to submit, and did submit, frivolous letters to the IRS to persuade the IRS that the false and fraudulent federal income tax returns prepared by the defendant and co-conspirators were legitimate.

  e. It was part of the manner and means that members of the conspiracy would and did recruit new individuals to engage in a fraudulent OID tax return scheme designed to cheat the United States out of Treasury funds.

  f. It was part of the manner and means that **JUDY SELLERS** and co-conspirators **BLAINE JOHNSTON, RICHARD CYR,** and **VERDELL DUHART** would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of and the acts done in furtherance of the conspiracy.

## **OVERT ACTS OF THE CONSPIRACY**

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, the defendant and co-conspirators, known and unknown to the grand jury, committed, or caused to be committed, the following overt acts, listed below, within the Northern District of Florida and elsewhere:

  1. On or about November 11, 2008, Forms 1099-OID were provided to ABACO on behalf of **RICHARD CYR** in an envelope with **JUDY SELLERS'** return address.

8

2. On or about December 14, 2008, **RICHARD CYR** met with **JUDY SELLERS** in Chipley, Florida, and paid **SELLERS** $500 for the preparation of documents related to the object of the conspiracy.

3. On or about December 19, 2008, **RICHARD CYR** met with an owner of ABACO in the Chipley and Panama City areas of Florida and paid $2000 as a retainer for services related to the object of the conspiracy.

4. On or about December 30, 2008, **RICHARD CYR** filed, or caused to be filed through ABACO, a fraudulent Form 1040 with the IRS in Panama City, Florida.

5. On or about January 22, 2009, **BLAINE JOHNSTON** and/or an employee or co-owner of ABACO and **RICHARD CYR** corresponded through e-mail with the following statements:

    a. "I or we will come to floriday befor (sic) the post office deadline for the end of the year and sign the papers and mail them from there."

    b. "Ok Blaine a 1099A abandonment needs to be filed and sent to KC, Missouri right away so I don't get a frivolous file."

  c. "I need the 1099A to go right away, Judy said the 1099A doesn't even have to be 2005…when you are doing 2005 let me know."

6. In and around January 2009 **VERDELL DUHART** and **JUDY SELLERS** wrote about protecting each other should the IRS come to investigate, with **DUHART** indicating that he had "been rehearsing furiously" what to say should the IRS come and that he is not a "sniveling and spineless snitch or traitor."

7. On or about February 11, 2009, **JUDY SELLERS** informed **VERDELL DUHART** that he could contact **BLAINE JOHNSTON** for assistance and that **JOHNSTON** could fax completed returns to Ft. Lauderdale for signature once completed.

8. On or about February 26, 2009, **VERDELL DUHART** submitted handwritten documentation via fax to **BLAINE JOHNSTON**, referencing **JUDY SELLERS** as his referral source.

9. On or about April 6, 2009, **RICHARD CYR** filed, or caused to be filed through ABACO, a 2006 Form 1040 with the IRS.

10. On or about April 7, 2009, **RICHARD CYR** filed, or caused to be filed through ABACO, a 2007 Form 1040 with the IRS.

10

11. On about or between May 12, 2009, and May 15, 2009, **RICHARD CYR** filed, or caused to be filed through ABACO, a 2008 Form 1040 with the IRS.

12. On or about September 20, 2009, **JUDY SELLERS** instructed **VERDELL DUHART** to ask a co-owner of ABACO to do the OIDs for him or to pay her, that is **SELLERS**, to do them but warned him to keep that quiet. **SELLERS** wrote "You know I don't normally do tax forms for people. I don't trust most people. If the IRS knocks on your door, I KNOW that you would tell them that you did your own...."

13. On or about October, 2009, **JUDY SELLERS** stated to a third party interested in the redemption process that she had an Enrolled Agent in Panama City who can prepare Forms 1040 with the "redemption" understanding of the Form 1099-OID; that she could provide the latest teachings that are necessary "to be able to get the IRS off peoples ass about frivolous filings, liens, stealing the refunds from people's bank accounts"; and that she maintains a website which provides a resources page with documents on the OID process.

14. On or between 2008 and 2009, **VERDELL DUHART** and **JUDY SELLERS** conducted e-mail correspondence as follows, among others:

a. **SELLERS** wrote to **DUHART**, "it was actually ME that got you that refund. Blaine would never have done the 1099A…."

b. **DUHART** responded to **SELLERS**, "I know you did all my paperwork" and "I got the refund because YOU DID THE PAPERWORK!"

c. **DUHART** wrote "I assure you that you will have your hands full of new clients very soon." He wrote that he has "recruited and [is] training" new individuals in the principles of redemptive commerce, "I could even have you around 10 clients at one time."

d. **SELLERS** sent **DUHART** a completed application for FIRE program and instructed him on making false statements to the IRS in order to get access to this filing system, indicating that **SELLERS** also had a "TCC" number for the FIRE system.

e. **SELLERS** instructed **DUHART** to inform people, to whom he was teaching the process, to "start out small…not that they are not entitled to refunds for everything their accounts have been accessed for, it's just

12

that the bigger the refund, the more likely it is to draw attention to the IRS wanting to investigate."

15. On or about January 22, 2009, **JUDY SELLERS** advised **VERDELL DUHART** not to contact enrolled agent T.M. since she had just been raided by the IRS and **SELLERS** then sent out a detailed message to numerous individuals about the raid.

16. On or about September 26, 2009, **VERDELL DUHART** informed **JUDY SELLERS** that he was sending her money in reference to more business for filing redemption documents and that he needed "to do another filing to get another refund" since he had no more money.

17. On or about September 30, 2009, **JUDY SELLERS** wrote in an e-mail to **VERDELL DUHART** that she preferred to get mail that she doesn't have to sign for and blank money orders because she believed that "eventually the IRS et al, is going to come after my strawman for all the money order that I DO sign."

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

On about or between November 2008, and April 4, 2009, in the Northern District of Florida, and elsewhere, the defendant,

**JUDY SELLERS,**

did willfully aid and assist in, and procure, counsel and advise the preparation and

13

presentation to the Internal Revenue Service, of a United States individual tax return, Form 1040 of **RICHARD CYR** for the calendar year 2005.  The return was false and fraudulent as to material matters in that it listed 1099-OID based income on line 8a of $287,536 and federal income tax withheld of that same amount included on line 64, claiming a refund of $196,244 which amounts, as the defendant **JUDY SELLERS** knew, were nonexistent and false.

All in violation of Title 26, United States Code, Section 7206(2).

### COUNT THREE

On about or between January 2009, and April 4, 2009, in the Northern District of Florida, and elsewhere, the defendant,

**JUDY SELLERS,**

did willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service, of a U.S. individual tax return, Form 1040, of **VERDELL DUHART** for the calendar year 2008.  The return was false and fraudulent as to material matters in that it listed 1099-OID based income on line 8a of $88,603 and federal income tax withheld on line 64 of $51,200, claiming a refund of $32,420 which amounts, as the defendant **JUDY SELLERS** knew, were nonexistent and false.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT FOUR

On about or between March 16, 2012, and March 19, 2012, in the Northern District of Florida, the defendant,

**JUDY SELLERS,**

did file and attempt to file, in a record that is generally available to the public, a false lien and encumbrance against the real and personal property of a United States Attorney and a Department of Justice Trial Attorney, both of whom are officers and employees of the United States Government, as described in Title 18, United States Code, Section 1114, on account of the performance of the official duties of the United States Attorney and the Department of Justice Trial Attorney, knowing and having reason to know that such lien and encumbrance was false and contained materially false, fictitious, and fraudulent statements and representations.

All in violation of Title 18, United States Code, Section 1521.

## COUNT FIVE

Beginning on or about May 14, 2015, and continuing through on or about September 5, 2023, in the Northern District of Florida and elsewhere, the defendant,

**JUDY SELLERS,**

did knowingly fail to appear before a court, that is, the U.S. District Court for the Northern District of Florida, as required by the conditions of release imposed on

January 27, 2015, by United States District Judge Mark E. Walker, in Case No. 4:14cr11-MW/CAS.

In violation of Title 18, United States Code, Section 3146(a)(1) and (b)(1)(A)(ii).

A TRUE BILL:

███████████████████

FOREPERSON

Feb. 6, 2024
DATE

MERRICK GARLAND
UNITED STATES ATTONEY GENERAL
BY:

ROGER B. HANDBERG
United States Attorney

*[signature]*
LAURA COFER TAYLOR
Special Attorney to the U.S. Attorney General

*[signature]*
KELLY MILLIRON
Special Attorney to the U.S. Attorney General

*[signature]*
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division